María y Ángela Cintrón, esta última asistida y representada por su madre con patria potestad sobre la misma, Victoria Vázquez, demandantes y apelantes, *v.* West India Oil Company, demandada y apelada.

Núm. 7540.—*Sometido:* Marzo 12, 1940. *Resuelto:* Mayo 29, 1940.

*Diego O. Marrero* y *Luciano Colón,* abogados de las apelantes; *Brown, González & Newsom,* abogados de la apelada.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

La presente es una acción de daños y perjuicios entablada por María y Angela Cintrón contra la West India Oil Company, en la que reclaman la suma de $4,999, más las costas, gastos y honorarios de abogado, por la muerte de Angel Cintrón, hijo y padre, respectivamente, de las demandantes.

Alegan las demandantes que entre 8 y 9 p. m. del día 10 de junio de 1934 el automóvil Ford propiedad de la demandada, que guiaba su empleado Luis Costas por la carretera pública que de la playa de Ponce conduce a la ciudad del mismo nombre, arrolló a Angel Cintrón, que caminaba en dirección contraria al automóvil de la demandada, montado en una bicicleta. Se le imputa al conductor del automóvil Ford como acto constitutivo de negligencia el caminar por la izquierda de la carretera con indiferencia absoluta para la vida y seguridad de las distintas personas que tenían derecho a transitar por dicha carretera pública.

La demandada contestó la demanda admitiendo la ocurrencia del accidente pero negando que éste se debiera a la negligencia de su empleado, y alegando en contrario que el choque entre el automóvil y la bicicleta se debió única y exclusivamente a la negligencia, descuido y temeridad de Angel Cintrón, quien conducía la bicicleta a una velocidad exagerada, sin luces, haciendo zigzags por la carretera y en estado absoluto de embriaguez.

La corte de distrito, después de oír la prueba abundantísima ofrecida por una y otra parte, cuya transcripción consta de 554 páginas, dictó sentencia declarando sin lugar la demanda, sin especial condenación de costas.

Las demandantes apelaron y en su alegato le atribuyen a la corte sentenciadora la comisión de cinco errores, todos ellos relacionados con la apreciación que de la evidencia hizo.

El primero consiste en haber resuelto que el automóvil de la demandada caminaba normalmente por su derecha en

la carretera; el segundo, en haber resuelto que la preponderancia de la prueba en cuanto a la forma en que ocurrió el accidente, estaba a favor de la demandada; el tercero, en haber resuelto que la negligencia de Angel Cintrón fuera la causa próxima y directa del accidente; el cuarto en haber resuelto que no medió negligencia imputable a la demandada o al conductor del automóvil de su propiedad; y el quinto, al dictar sentencia en contra de las demandantes.

A nuestro juicio la corte inferior no cometió ninguno de los errores que le imputan las apelantes. Como es natural en casos de la naturaleza del presente, la evidencia fué contradictoria en varios particulares pero la corte, que vió y oyó a los testigos, resolvió el conflicto que de esa prueba contradictoria surge, a favor de la demandada, y es cosa resuelta ya por este tribunal que a menos que la apreciación sea errónea o que en ella medie la pasión, el prejuicio o la parcialidad, no variará o alterará las conclusiones a que haya llegado la corte *a quo*.

Sería prolijo resumir las declaraciones de los testigos que desfilaron en la vista de este caso, pero sí debe hacerse constar que ninguno de los que ofreciera la parte demandante vió el accidente. Sobre este extremo, se expresa así la corte inferior:

"La corte no puede descansar en las declaraciones de los testigos de la demandante que aparecieron como testigos presenciales, porque, según resulta de sus propias declaraciones, ninguno de ellos vió el accidente: todos declaran que sintieron, es decir, que oyeron el ruido producido por el choque de la bicicleta y el automóvil. Estos testigos, además, fueron impugnados con éxito por testigos de la demandada y el *affidavit* de Clemente Mercado.

"Los únicos testigos que realmente vieron cómo ocurrió el accidente fueron los testigos Luis Costas y Jorge Gutiérrez, quienes venían en el automóvil de la demandada."

Esa conclusión de la corte inferior está ampliamente sostenida por la evidencia.

Con relación a los errores numerados primero, segundo y cuarto, declararon el cabo de la Policía Insular Evangelista

Rosario, y el policía Alberto Martínez, sobre las huellas o rastros que dejó el automóvil al aplicar los frenos. El segundo, Alberto Martínez, al preguntársele dónde empezaban esas huellas, contestó lo siguiente:

"Empezaban al lado derecho de la carretera, viniendo de la Playa para Ponce, seguían en una dirección recta unos cuatro o cinco metros y luego rápidamente cortaban hacia la izquierda y venían marcando el resto de metros en una forma como diagonal, mejor dicho, cortando carretera hacia la izquierda."

El primero, el cabo Rosario, contestó así a las preguntas que sobre el particular le hiciera el abogado de la demandada:

"¿Usted midió las huellas?
"Sí, señor.
"¿Con qué?
"Con pasos naturales.
"¿Dónde empezaban las huellas?
"Empezaban...—ya dije la dirección que traía el automóvil que hubo el accidente; empezaban a una distancia de catorce, diez y seis o diez y ocho pasos, exactamente no recuerdo, hasta el punto que paró el carro en la izquierda del automóvil, muy cerca de la cuneta.
"Lic. González:
"¿En qué lado empezaban esas huellas?
"En el derecho.
"¿Está seguro de eso?
"Seguro.
"¿Y terminaban en el lazo izquierdo?
"Sí."

De modo que aun cuando prescindiéramos del testimonio ofrecido por los únicos testigos oculares del accidente, que lo fueron los que a la sazón viajaban en el automóvil de la demandada, siempre estarían justificadas las conclusiones de la corte inferior en cuanto a los errores 1, 2 y 4 se refiere, por el testimonio de personas imparciales, como el de los testigos Rosario y Martínez.

Examinemos ahora el tercer error apuntado por las apelantes. En la opinión que sirvió de base a la sentencia

apelada, el juez sentenciador declaró probados satisfactoria-
mente, entre otros, los siguientes hechos:

"El día 10 de junio de 1934 Luis Costas, empleado de la deman-
dada, conducía en el curso de su empleo, el referido automóvil en
dirección de la Playa de Ponce hacia la ciudad por la Carretera
Central, caminando por su derecha, entre ocho y ocho y media de la
noche, acompañado de Jorge Gutiérrez, empleado también de la
demandada.

"Al correr dicho automóvil así conducido por el kilómetro 133
de la Carretera Central, con luces encendidas, a una velocidad mode-
rada y por su derecha, Costas, el conductor del auto, divisó como a
150 yardas de distancia a Angel Cintrón que iba en dirección con-
traria montado en una bicicleta y corriendo por su izquierda, o sea
por el mismo lado de la carretera que corría el automóvil. El con-
ductor Costas entonces se acercó más al centro de la carretera dejando
espacio al ciclista para que pudiera proseguir en la dirección que
éste llevaba. Así las cosas y cuando sólo mediaba una distancia como
de 15 pies entre la bicicleta y el auto, el ciclista Cintrón, repentina-
mente, se lanzó a cruzar la carretera. Costas trató de evitar el
accidente desviando el automóvil hacia el lado izquierdo de la carre-
tera, hasta que sus dos ruedas delanteras cayeron en la cuneta donde
paró el automóvil; y, a pesar de esa maniobra de Costas, la bicicleta
de Cintrón chocó con el tapalodo derecho delantero del auto y, como
resultado del choque, recibió Angel Cintrón los golpes que le pro-
dujeron la muerte; quedando, además, desfigurada la rueda delan-
tera de la bicicleta."

Tuvo dudas, sin embargo, en cuanto al punto de si el
ciclista Angel Cintrón se encontraba esa noche en estado
de embriaguez.

Aun cuando la corte *a quo* hubiera declarado que Angel
Cintrón se encontraba sobrio la noche del accidente, si acep-
tamos que cuando sólo mediaba una distancia de 15 pies
entre la bicicleta y el auto, Cintrón cruzó la carretera, siendo
entonces arrollado con el automóvil, por el empleado de la
demandada, forzoso es concluir que el acto realizado por
Cintrón fué la causa próxima y directa del accidente, y que
por lo tanto no erró la corte sentenciadora al así declararlo.

La evidencia es más que suficiente para sostener lo que el juez declaró como hechos probados.

El quinto error no amerita ninguna discusión. Sólo podría sostenerse de haberse declarado fundado cualquiera de los cuatro que le preceden.

*Debe confirmarse la sentencia recurrida.*